IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| MAGGIE DUNN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL CASE NO. 3:23-cv-649-ECM ) [WO] |
| SANOFI-AVENTIS U.S. LLC, *et al.*, | ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION and ORDER**

**I. INTRODUCTION**

This case concerns the chemotherapy drug Taxotere, which until recently was part of a multidistrict litigation where plaintiffs alleged that they developed permanent alopecia after use of the drug. This case, filed by Plaintiff Maggie Dunn, was then remanded to this Court. Now pending before the Court is Defendants' Sanofi-Aventis U.S. LLC and Sanofi US Services Inc.'s ("Sanofi") motion for judgment on the pleadings. (Doc. 24). After reviewing the parties' submissions, the Court finds that the motion is due to be granted.

**II. STANDARD OF REVIEW**

"Granting judgment on the pleadings is appropriate when 'there are no material facts in dispute and the moving party is entitled to judgment as a matter of law.'" *Thompson v. Regions Sec. Servs., Inc.*, 67 F.4th 1301, 1305 (11th Cir. 2023) (citation omitted). "All facts alleged in the complaint must be accepted as true and viewed in the light most favorable to the nonmoving party." *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1273

(11th Cir. 2008) (citing *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001)).

## III.  JURISDICTION

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.  The parties do not contest personal jurisdiction or venue, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## IV.  STATEMENT OF FACTS

The case before the Court was remanded from the multidistrict litigation *In re: Taxotere (Docetaxel) Products Liability Litigation*, No. 2:16-md-2740 (J.P.M.L.) ("the MDL Court").  The Plaintiff filed the instant case on November 25, 2017, and it was remanded to this Court from the MDL Court on November 3, 2023.  The operative pleadings consist of the Second Amended Master Complaint ("SAMC") (doc. 9-4 at 342) and Ms. Dunn's Short Form Complaint ("SFC") (doc. 1), which contains her individual allegations.  In granting the plaintiffs' motion for leave to file the SAMC, the MDL Court ordered Sanofi not to plead in response to the SAMC, and that Sanofi's answer to the First Amended Master Complaint would be deemed its answer to the SAMC. Doc. 4230, at 2, *In re: Taxotere*, No. 2:16-md-2740.  The following facts, taken in the light most favorable to Ms. Dunn, are alleged in the SAMC.

Taxotere is a chemotherapy drug primarily administered to those suffering from breast cancer. Sanofi is pharmaceutical company involved in the development, testing, manufacturing, labeling, marketing, and selling of Taxotere.  The Food and Drug Administration ("FDA") approved Taxotere for various uses in the 1990s and early 2000s.

Initially, hair loss was listed as a "possible side effect" of Taxotere. (Doc. 9-4 at 365). Temporary and reversible hair loss ordinarily results from chemotherapy. Over the years, however, permanent hair loss, or Permanent Chemotherapy Induced Alopecia ("PCIA"), became a well-documented and studied side effect of Taxotere and began to be reported on by news outlets in 2010. PCIA "is defined as an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy." (Doc. 9-4 at 378). Alopecia lowers self-esteem and quality of life, and causes anger, anxiety, sadness, and other negative emotional effects.

Meanwhile, Sanofi continued to mislead consumers as to the serious side effects of Taxotere. For example, Sanofi and its sales associates "cherry picked" positive data, emphasized certain side effects over others, and distributed materials to physicians which were banned by the FDA. In 2015, after Sanofi submitted new information to the FDA about PCIA, updated warnings were added to the drug's Patient Counseling Information advising physicians to inform patients of some documented cases of permanent hair loss, but that "in most cases normal hair growth should return." (Doc. 9-4 at 366). The drug's label, however, did not mention PCIA.

Ms. Dunn alleges that she used Taxotere from August 7, 2012 to October 28, 2012. Ms. Dunn filed her SFC on November 25, 2017. Under Question 12 of the SFC: the "Nature and extent of the alleged injury," Ms. Dunn alleges that she "continues to suffer and will suffer from disfiguring permanent alopecia as a result of receiving chemotherapy with Taxotere." (Doc. 1 at 4). Apart from this statement, and when and where the drug was administered, no other case-specific facts are alleged. Ms. Dunn brings claims for

strict products liability failure to warn (Count One),[1] negligence (Count Three), negligent misrepresentation (Count Four), fraudulent misrepresentation (Count Five), fraudulent concealment (Count Six), and fraud and deceit (Count Seven).

## V.  DISCUSSION

The Plaintiff first contends that the Defendants' motion is not ripe because the pleadings are not closed.  The Defendants, however, have filed an answer. Doc. 961, *In re: Taxotere*, No. 2:16-md-2740.  Further, all deadlines to amend complaints have passed, (doc. 10 at 76), and this Court previously denied the Plaintiff's motion for leave to file an amended complaint (doc. 32).  Thus, the pleadings are closed, and the motion is ripe for review. *See Filo Am., Inc. v. Olhoss Trading Co.*, 321 F. Supp. 2d 1266, 1267 (M.D. Ala. 2004) ("Once the answer was filed, the pleadings were closed[.]").[2]

The Defendants argue that Ms. Dunn did not plead her fraud claims with the particularity required by Rule 9(b), and that her claims are time-barred.  The Court addresses each of the Defendants' arguments in turn.

**A. Fraud Claims Under Rule 9(b)**

Ms. Dunn brings three claims sounding in fraud: fraudulent misrepresentation, fraudulent concealment, and fraud and deceit.  The Defendants argue that Ms. Dunn did not plead these claims with the particularity required by Rule 9(b).  Under Rule 9(b), "[i]n

---

[1] Counts are numbered according to the labels on the checked boxes in the SFC.

[2] The Court here, and elsewhere in the opinion, cites to non-binding authority.  While the Court recognizes that these cases are not precedential, the Court finds them persuasive.

alleging fraud . . . , a party must state with particularity the circumstances constituting fraud . . . ." FED. R. CIV. P. 9(b). To satisfy Rule 9(b), the complaint must set forth

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Young v. Grand Canyon Univ., Inc.*, 57 F.4th 861, 875 (11th Cir. 2023) (citation omitted).

After the Defendants in the previous MDL proceedings moved to dismiss the fraud claims in the Master Complaint for failure to plead with particularity, the MDL Court acknowledged in an August 30, 2017 hearing before Judge Engelhardt that "a master complaint could not possibly be expected to include every case-specific detail such as a particular misleading statement made by a particular sales representative to the physician of an individual plaintiff." Hearing Transcript, Doc. 823, at 22, *In re: Taxotere*, 2:16-md-02740. Indeed, the allegations in the SAMC "are not enough to satisfy the who, what, when, where, and how required by Rule 9(b)" as it concerns Ms. Dunn specifically. *Young*, 57 F.4th at 876; *see Maxwell v. Sanofi-Aventis U.S. LLC*, 2023 WL 7115575, at *2 (N.D. Ala. Oct. 27, 2023). Thus, the Court considers both the SAMC and the Plaintiff's SFC in deciding the sufficiency of the pleadings. Hearing Transcript, Doc. 823, at 22, *In re: Taxotere*, 2:16-md-02740.

The MDL Court then ruled that "specific allegations, particularly with respect to fraud, should be perfected within the short form complaints filed in the individual member

5

cases." (*Id.* at 23).[3] Ms. Dunn, however, did not amend her complaint to perfect her allegations of fraud. Ms. Dunn did not allege what statements mislead her, at what time and place the statements were made, or who made the statements. The only information specific to Ms. Dunn are the dates she was administered Taxotere, and that it was administered in Alabama. Consequently, the Court finds that Ms. Dunn's claims of fraud are due to be dismissed for failure to plead with particularity.

### B. Statute of Limitations

The Defendants next argue that Ms. Dunn's remaining claims are time-barred. Ms. Dunn's negligence and failure to warn claims are subject to a two-year statute of limitations. *Bush v. Ford Life Ins. Co.*, 682 So. 2d 46, 47 (Ala. 1996) (per curiam) ("The statute of limitations applicable to a negligence claim is two years."); ALA. CODE 1975, § 6–2–38(l) ("All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years."); *McKenzie v. Janssen Biotech, Inc.*, 295 So. 3d 617 (Ala. 2019) (applying two year statute of limitations to failure to warn claims). Under Alabama law, the "statute of limitations begins to run when the cause of action accrues, which . . . is the date the first legal injury occurs." *Ex parte Abbott Lab'ys*, 342 So. 3d 186, 194 (Ala. 2021) (citing *Ex parte Integra LifeSciences Corp.*, 271 So. 3d 814, 818 (Ala. 2018)). Further, "[a] cause of action accrues as soon as the claimant is entitled to maintain an action, regardless of

---

[3] In Case Management Order No. 39, which summarized the MDL proceedings for this Court, the MDL Court confirmed that "[the MDL Court] has ruled that any fraud-based claims must be perfected within the short form complaints filed in the individual member cases." (Doc. 10 at 75).

whether the full amount of the damage is apparent at the time of the first legal injury." *Id.* at 194 (citing *Chandiwala v. Pate Constr. Co.*, 889 So. 2d 540, 543 (Ala. 2004)).

The SAMC defines PCIA "as an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy." (Doc. 9-4 at 378). The Defendants contend that applying the alleged definition of PCIA here, the statute of limitations on Ms. Dunn's claims began to run on April 28, 2013, six months after completion of her chemotherapy and when she first suffered from PCIA. Accordingly, they argue, the complaint filed on November 25, 2017 was filed outside the two year statute of limitations. For the reasons stated below, the Court agrees.

1. ***Waiver and PTO 105***

Ms. Dunn first argues that in the MDL, the Defendants stipulated to not make the arguments they bring in this motion. (Doc. 9-2 at 167–173 (hereinafter "PTO (Pretrial Order) 105")). In PTO 105, the MDL Court gave instructions for plaintiffs wishing to amend their short form complaints to address the statute of limitations, in light of an influx of motions to amend short form complaints after the Court denied the Third Amended Master Complaint. (*Id.* at 167). The MDL Court ordered that "Plaintiffs may amend their complaints to add factual allegations regarding particularized facts individual and specific to each Plaintiff's medical care and treatment and/or that Plaintiff's communications with medical professionals." (*Id.*). The parties subsequently stipulated that plaintiffs would not seek leave to amend their short form complaints to add or include allegations inconsistent with PTO 105's limitations. (*Id.* at 169). Further, the Defendants stipulated that if they sought "dismissal of any case based on a statute of limitations," they would "not argue

7

waiver based on any Plaintiff's refraining from amending her SFC to include allegations inconsistent with PTO 105 . . . ." (*Id.*). The Defendants here, however, do not rely on "waiver based on [Ms. Dunn's] refraining from amending her SFC to include allegations inconsistent with PTO 105." (*Id.*). Instead, they argue that the claims are time-barred on their face, and they respond to the substance of Ms. Dunn's argument. Accordingly, the Court finds that the Defendants are not in violation of PTO 105.

### 2. *Latent Injury Exception*

Ms. Dunn argues that there is a factual dispute as to when she suffered her injury. Specifically, she argues, a jury could find that PCIA is considered a "latent injury" under Alabama law. If PCIA is considered a latent injury, the statute of limitations "does not begin to run until the claimant, as a reasonable person, should recognize the nature, seriousness, and compensable character of his injury or disease." *Dillard v. Calvary Assembly of God*, 372 So. 3d 551, 555 (Ala. Civ. App. 2022) (citation omitted). Alabama Courts have applied the latent injury exception in workers compensation cases to address situations where "the injury itself does not exist in compensable degree during the claims period." *Am. Cyanamid v. Shepherd*, 668 So. 2d 26, 27 (Ala. Civ. App. 1995) (citing *Gattis v. NTN–Bower Corp.*, 627 So. 2d 437 (Ala. Civ. App. 1993)). This Court, however, does not reach the issue of "whether a latent injury exception to the statute of limitations for products cases exists under Alabama law," because Ms. Dunn's allegations "preclude her from making this argument." *Maxwell v. Sanofi-Aventis U.S. LLC*, 2023 WL 7115575, at *3 (N.D. Ala. Oct. 27, 2023).

Ms. Dunn first argues that her case is similar to *Payne v. Alabama Cemetery Ass'n, Inc.*, 413 So. 2d 1067 (Ala. 1982), where the plaintiff sought damages caused by mental and physical distress when she discovered her mother's remains were missing from the gravesite. The Alabama Supreme Court held that the statute of limitations began to run when the plaintiff discovered that the remains were missing, rather than at the time the remains were removed. *Id.* at 1072. Ms. Dunn, however, misapplies *Payne*. In *Payne*, the court found that "the injury to the plaintiff actually occurred" when she discovered the missing remains, not that the injury was latent. *Id*.

In Ms. Dunn's case, the injury alleged is PCIA and its effects. While Ms. Dunn argues in her brief that the condition's permanence was not known to her until a later time, Ms. Dunn alleges in the SAMC that temporary alopecia becomes PCIA six months after completion of chemotherapy. The allegations further indicate that she was aware of her injury at that time because it is a visible condition, which "heighten[s] awareness" of appearance, lowers self-esteem, and causes other severe emotional distress. (Doc. 9-4 at 386–87). "These allegations prevent [Ms. Dunn] from asserting that she was unaware of 'the nature, seriousness, and compensable character of' her hair loss," even if she was unaware of its full extent at the time. *Maxwell*, 2023 WL 7115575, at *4 (citing *Dillard*, 372 So. 3d at 555); *see Walker v. Flagstar Enterprises, Inc.*, 981 So. 2d 1137, 1141 (Ala. Civ. App. 2007) (rejecting the argument that the latent-injury exception should apply when the plaintiff "did not know or have reason to know the 'full extent' of her disability—*i.e.*, she did not realize that she had a permanent total disability," in the workers' compensation context).

Further, other courts, including the MDL Court, have held plaintiffs to the alleged definition of PCIA in the SAMC and thus measured the timeliness of plaintiffs' claims from six months after the completion of their chemotherapy. (Doc. 10 at 95–96); *Maxwell*, 2023 WL 7115575; *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 2021 WL 3006968, at *3 (E.D. La. July 14, 2021) ("On the face of the pleadings, then, [p]laintiff sustained her injury in March 2015, when she had incomplete hair regrowth six months after she completed her chemotherapy treatment."); *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 2020 WL 8257755, at *2 (E.D. La. Jan. 23, 2020), *aff'd*, 995 F.3d 384 (5th Cir. 2021) ("This Court agrees with [d]efendants that [p]laintiff's case is prescribed on the face of the pleadings.").[4]

Maintaining this analysis, the Court finds that Ms. Dunn's claim arose at the time she alleged she first suffered from PCIA, "regardless of whether the full amount of the damage [was] apparent [to Ms. Dunn] at the time." *Ex parte Abbott Lab'ys*, 342 So. 3d at 194 (citing *Chandiwala*, 889 So. 2d at 543).

### 3. *Equitable Tolling*

Ms. Dunn next argues that equitable tolling precludes the dismissal of her claims. To receive equitable tolling, Ms. Dunn must establish "(1) that [s]he has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her] way' as to the filing of [her] action." *Weaver v. Firestone*, 155 So. 3d 952, 957 (Ala. 2013) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Extraordinary circumstances are those

---

[4] The MDL Court also reiterated in its Transfer Order that it had denied proposed amendments that sought to no longer define PCIA as manifesting after six months of chemotherapy. (Doc. 10 at 75–76).

"that are beyond the [plaintiff's] control and that are unavoidable even with the exercise of diligence." *Id.* at 958 (Ala. 2013) (citing *Ex parte Ward*, 46 So. 3d 888, 897 (Ala. 2007)). Whether equitable tolling applies is a fact specific inquiry, and the Court must consider "whether principles of 'equity would make the rigid application of a limitation period unfair' and whether the petitioner has 'exercised reasonable diligence in investigating and bringing [the] claims.'" *Id.* at 958 (alteration in original) (citing *Ex parte Ward*, 46 So. 3d at 897).

Ms. Dunn contends that because PCIA was not a well-established disease when her claims accrued, and the Defendants intentionally hid that their product caused PCIA, she was not aware of her claims until after the statute of limitations had run.[5] Despite the allegations that the Defendants covered up and failed to warn of the connection between Taxotere and PCIA, the Court cannot say that it was "unavoidable even with the exercise of diligence" that Ms. Dunn's claims were untimely filed. *Weaver*, 155 So. 3d at 958. "Equitable tolling is only applied or used sparingly . . . . Any inequitable circumstances preventing a party from initiating a timely lawsuit must be truly beyond the control of the plaintiff." *Id.* at 959 (citing 51 AM. JUR. 2d *Limitation of Actions* § 153 (2011)). The statute of limitations for Ms. Dunn's claims ran until April 28, 2015, and she did not file her complaint until March 31, 2017. The SAMC alleges that by 2010, multiple journals and major news outlets had begun publishing reports and studies on the connection between

---

[5] Ms. Dunn relies on evidence outside the pleadings to establish these facts. However, in a motion for judgment on the pleadings, the Court only considers the substance of the pleadings. *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998). The Court thus declines to consider the exhibits.

11

Taxotere and PCIA. (Doc. 9-4 at 271–72).  The number of studies only grew in the years after.  The facts alleged are not sufficient to permit the Court to find that Ms. Dunn, exercising reasonable diligence, could not have discovered her injurers' identities until March 2017. *Weaver*, 155 So. 3d at 958; *see also In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 995 F.3d 384, 394 (5th Cir. 2021) ("A reasonable inquiry would have uncovered at least some information that linked Taxotere to persistent alopecia.").  The Court thus finds that equitable tolling does not apply to Ms. Dunn's claims.

### 4. ALA. CODE § 6-2-3

Finally, Ms. Dunn argues that ALA. CODE § 6-2-3 tolls the statute of limitations for her claims.  Under § 6-2-3, claims sounding in fraud are not "considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action." *Id.*  Ms. Dunn's claims for fraud are due to be dismissed for failure to plead with particularity under Rule 9(b).  However, § 6-2-3 may also apply to other torts not arising in fraud if the Plaintiff pleads "fraudulent concealment of the existence of a cause of action." *Ladd v. Stockham*, 209 So. 3d 457, 468 (Ala. 2016); *See DGB, LLC v. Hinds*, 55 So. 3d 218, 224 (Ala. 2010).

To "show that a plaintiff's claims fall within the savings clause of § 6–2–3[,] a complaint must allege the time and circumstances of the discovery of the cause of action." *Ex parte Price*, 244 So. 3d 949, 956 (Ala. 2017) (per curiam) (quoting *DGB, LLC v. Hinds*, 55 So. 3d 218, 226 (Ala. 2010) (finding allegations that investors first discovered claims during a 2007 board meeting sufficient to allege the discovery of their cause of action)).  "The complaint must also allege the facts or circumstances by which the defendants

concealed the cause of action or injury and what prevented the plaintiff from discovering the facts surrounding the injury." *DGB, LLC*, 55 So. 3d at 226.  Ms. Dunn has not alleged the time and circumstances of the discovery of her cause of action, and thus does not establish tolling under ALA. CODE § 6-2-3.  The SAMC only contains allegations general to all plaintiffs, which detail how the Defendants hid the connection between Taxotere and PCIA.  It does not, however, include allegations as to when and how Ms. Dunn discovered her cause of action, and her SFC contains no more detail than the time and place of her use of Taxotere.

"[T]he Alabama Supreme Court's language is clear:" if "the plaintiff did not plead fraudulent concealment, she may not invoke ALA. CODE § 6–2–3 in a fraud case." *Henderson v. Washington Nat. Ins. Co.*, 454 F.3d 1278, 1283 (11th Cir. 2006) (citing *Smith v. Nat'l Sec. Ins. Co.*, 860 So. 2d 343 (Ala. 2003) (finding that a plaintiff could not invoke § 6-2-3 where the plaintiff failed to allege fraudulent concealment with particularity)); *see also McKenzie v. Janssen Biotech, Inc.*, 295 So. 3d 617, 622 (Ala. 2019) ("When a reasonable person should have discovered a claim that is alleged to have been fraudulently concealed is generally a question to be determined by the trier of fact . . . . Nevertheless, before that determination can be submitted to the trier of fact, the plaintiff's allegations of fraud must meet certain pleading requirements.").  Because Ms. Dunn did not properly plead her fraud claims or fraudulent concealment of her negligence and failure to warn claims, she cannot invoke § 6–2–3.  Accordingly, the Court finds that Ms. Dunn's claims are barred on their face by the statute of limitations.

## VI.  CONCLUSION

For the reasons stated, and for good cause, it is ORDERED that the motion for judgment on the pleadings (doc. 24) is GRANTED.  It is further

ORDERED that the Plaintiff's claims are DISMISSED with prejudice.

Done this 7th day of May, 2024.

                                          /s/ Emily C. Marks          
                              EMILY C. MARKS
                              CHIEF UNITED STATES DISTRICT JUDGE